ANDREW MacKANIN, JR., et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 42794.)

Court of Claims, November 29, 1966.

*Henry Temes* for claimants. *Louis J. Lefkowitz, Attorney-General* (*Kent Marden* of counsel), for defendant.

ALEXANDER DEL GIORNO, J. The claimants were the owners of 0.9 acre of land, with a frame building thereon consisting of a bar and grill in the front, a banquet hall in the rear and a seven-room apartment above, in the front of which building claimants had added a brick, one-story extension, 7 feet wide by 41 feet long, in which there were two doors used for access to the premises. Within the southerly portion of said porch the claimants had established a room which was large enough to allow the use of a commercial " 25¢ a game " pool table.

In front of the building there was a blacktopped area some 30 feet wide at the north, some 60 feet wide (irregular) at the south and some 254 feet long, which, in addition to land areas on the right and left of the building, was used for parking of vehicles. The front area was level and permitted easy access to the premises.

The State took the entire land frontage, in addition to which the taking line traversed through the porch structure 0.44 feet at the north and continued southward in a lesser measure for two thirds of the frontage at which point said taking line cleared the building so that at the south end of the building it clears the brick front by some 0.19 feet.

The taking was for the widening of Route 17M from a southerly direction to a point only a few hundred feet north of claimants' property. In the course of the widening of Route 17M, the area in front of the building was dug deep and wide for a drainage ditch. A similar open ditch was constructed along Dolsontown Road which ran along the southerly boundary of claimants' land. However, the State established a driveway into claimants' property at the intersection of the two highways, which driveway covered a culvert in place of an open ditch. This driveway leads into the parking area situated alongside of and south of the building. The south parking area, except for a small portion which was already usable for parking purposes before the appropriation, was thereafter filled in by the claimants themselves.

The creation of the open drainage ditch in front of the premises makes the approach thereto, especially at night, dangerous and hazardous. Had the State been more interested, it could have placed thereat a culvert and covered it over, thus leaving the front attractive and safe as it had been before. This condition certainly detracts from the market salability of the subject.

The State could have done likewise along the claimants' front-

age on Dolsontown Road. In addition, the guardrail it erected along said road makes it almost impossible to turn from either highway into the south parking lot.

Since the appropriation the State has permitted the claimants to establish a driveway over the drainage ditch at Dolsontown Road which is useful for exiting therefrom. We may also note that the State left a covered culvert under the driveway leading to the north parking area.

Even if we should assume, however, that the parking facilities at the south of the building were fully acceptable, nevertheless a patron would have to walk from said parking lot into the Route 17M roadway and proceed thereon to the north end of the building to enter the premises, for there one finds the only entrance into the premises which the claimants could establish when the appropriation forced the closing of the two front doorways. This is a condition fraught with continuing danger.

At the trial the State offered the testimony of a competent construction specialist who testified that he would demolish the porch and reconstruct it as it generally was, but one foot narrower (6 feet), for the price of $5,800. The State's appraiser estimated this cost to cure at $6,000.

The State then offered in evidence, which the court accepted, State's Exhibit E, which represents a quitclaim deed from the State to the claimants of some two feet of the original acquisition which would clear from the original appropriation the entire building, including the wood overhang and gutters. The State has attached to said deed an amended map which reflects the proposed new limit of its acquisition.

This proffer was refused by the claimants. The court praises the State for having realized its original error, which it now seeks to rectify. The claimants should have accepted said proffered deed, for they were under a duty to mitigate damages against the State. To the extent that the power of equity lies in this court in the framework of this action, the court directs that the State record said instrument and amended map in the manner of a unilateral divestiture so that hereafter the State shall be estopped from claiming further than the easterly line established therein.

The court recognizes that this issue is quite different from the facts in the case of *Clark* v. *State of New York* (20 A D 2d 182). There the matter was one of clarifying the intent of a permanent easement taken by the State Power Authority which now clearly established for the record that the owners would retain the right to cross the easement strip under the high power wires for purposes of ingress and egress and to construct

roads thereunder. The Appellate Division accepted the clarification.

May we say that a trial court should avoid such commitment when faced with a proposal upon which it should make a determination? I think not, provided that in its judgment it is lawful to do so.

In this case, we are dealing with a miniscule appropriation of the claimants' building. It is true that when an appropriation is completed by filing the appropriation map in the office of the County Clerk, such filing represents a sale and purchase which in itself is definite and irrevocable. However, when, as here, we are faced with what obviously was an honest, albeit negligent, error, the court believes that it may have recourse to its heart as well as common sense and permit an equitable rectification of the error, which will be beneficial in the end to the claimants themselves in the event of a sale of their remainder, for this solution will, first of all, act as a definite estoppel of the State, will clear a cloud on the title, and prevent any possible inconsistent claims by the State regarding the building. (*Psaty* v. *Duryea,* 306 N. Y. 413.)

In the case of *Psaty* v. *Duryea* (*supra*), Judge DESMOND, speaking for the court, at page 417, states: "Since, therefore, it is such a suit against the State itself, the Appellate Division was correct in its unanimous dismissal of the suit on the jurisdictional ground since, concededly, the State has not given consent so to be sued. In the Presiding Justice's opinion for the unanimous Appellate Division, it is stated that the broad grant of power given to the Court of Claims in sections 8, 9 and 12 of the Court of Claims Act 'necessarily implies the right to afford equitable relief where the same may be incidental to a claim for a money judgment'. (282 App. Div. 94, 99.) We need not determine the full reach of that statement of law, since appellants' contentions are defeated by the fact that this is a suit against the State itself attempted to be brought in the Supreme Court and, as such, subject to dismissal. We may assume that, in determining claims for money damages against the State, the Court of Claims may apply equitable considerations and perhaps, to some extent, may grant some sort of incidental equitable relief ".

The court makes this a finding, that the recording of said deed and amended map may forever be enforcible by the claimants or their successors in interest as the sole owners of the property to the east of the proposed right of way as described in said amended map and deed.

148

The court cannot under any circumstances accept the contention raised by the claimants that this "touching" of the building should be accepted as an entire appropriation of the building; in our judgment this would be a total unbalancing of the equities involved, all to the claimants, none to the State.

The court now proceeds to the damages which will include an additional award of $200 for the use and occupation by the State of the said 2±-foot strip. The manner of the work performed has been already described. In our judgment, with or without the proffered deed by the State, the porch area is unusable under the present conditions. The small portion of land left in front is not only too narrow with or without the proffered deed, but it is sloping, the terrain pebbly and loose and without the protection of a fence or guardrail for users. However narrow the space would be, to make it safe and usable there should be either a retaining wall built at the side of the ditch nearer to the building with a proper fence to prevent users from falling into the ditch, or a culvert should be placed in the ditch and covered and the ground leveled as it was before the appropriation.

In any event, the reconstruction of the porch will be necessary to make it architecturally acceptable as well as usable, as indicated in State's Exhibit H, by eliminating the front doors, establishing "picture" windows, and re-establishing a suitable entrance at the north side of the building to which the patrons will have access without the danger of walking on the highway.

The money damages are set out in the court's findings filed herewith.