460 P.2d 56

STATE of New Mexico ex rel. STATE HIGH-
WAY COMMISSION of New Mexico, Plain-
tiff-Appellee and Cross-Appellant,

v.

John GRENKO, Phillip Grenko, Joe Grenko,
Jennie Grenko Vitullo, Antonio Grenko My-
ers and Diana Grenko Martin, Defendants-
Appellants and Cross-Appellees.

No. 8696.

Supreme Court of New Mexico.

April 28, 1969.

Rehearing Denied Oct. 28, 1969.

Hannett, Hannett, Cornish & Barnhart,
Albuquerque, for appellants.

Boston E. Witt, Atty. Gen., Joseph L. Droege, Special Asst. Atty. Gen., Sante Fe, for appellees.

OPINION

NOBLE, Chief Justice.

The Highway Commission condemned (1) a highway right of way approximately through the center of a 160-acre tract, owned by the Grenko heirs; (2) an easement for drainage structures; and (3) the direct access of abutting lands to the highway. Some 18.299 acres were taken, leaving approximately 70 acres on each side of the highway. The petition was filed May 9, 1966, at which time a preliminary order of entry was filed and made permanent July 19, 1966. The trial court found:

"1. The State Highway Commission has taken by condemnation 18.299 acres of the defendants Grenkos' land for the right-of-way for the construction of Interstate 40, and in addition has condemned easements on land of these defendants for the construction of drainage structures.

"2. The taking divided the defendants' property affected into two parcels, with no access being afforded from one parcel to the other.

"3. Access to the southerly parcel was undisturbed from that previously afforded it from existing roads.

"4. Access to the northerly parcel is to be made available over a service road traversing lands of the United States, administered by the Bureau of Land Management, by a right-of-way obtained by the plaintiff from the United States after the commencement of this action and after the order of immediate entry obtained in this action, which service road connects to a county road.

"5. The value of the defendants Grenkos' property before the taking by the plaintiff was $146,000.00, and after the taking was $126,500.00."

The trial commenced January 22, 1968. The Highway Department assumed that access between the two tracts and to the State Highway System was by means of county roads, shown on the right-of-way map, but when the map was introduced into evidence, it was discovered that these roads leading from the north to the south side of the highway through an underpass lacked some 200 feet of extending to the easterly boundary of the northern Grenko tract. During the trial, the Highway Commission obtained an easement for a right of way over federally owned lands, asked permission to amend its map by showing the access roads extending to the Grenko boundaries, and agreed to construct the necessary connecting link so as to provide access between the two tracts and to the system of highways by way of the county road. The court, over defendant's objection, admitted the written easement from the Bureau of Land Management covering the connecting link, permitted the requested amendment and awarded damages based upon the State's agreement to construct the access roads. The Grenkos have appealed.

While Grenko asserts four points relied upon as error, we think this case turns on whether the State could mitigate or diminish consequential damages by acquiring a right-of-way easement and agreeing to provide access from the northern tract over county roads to the main highway system, after filing its complaint and after entry of the order of possession. This action was brought under the Special Alternative Eminent Domain procedure provided by ch. 324, Laws of 1959. Section 14 of that act (§ 22-9-52, N.M.S.A. 1953) so far as pertinent, reads:

"For the purposes of assessing compensation and damages, the right thereto shall be deemed to have accrued as of the date the petition is filed, and its actual value on that date shall be the measure of compensation for all property taken, and also the basis of damages for property not taken but injuriously affected in cases where such damages are legally recoverable; * * *."

■ Relying on State ex rel State Highway Commission v. Chavez, 77 N.M.

104, 419 P.2d 759, Grenko insists that because the Highway Commission failed to provide access to the northern tract at the date of the notice in the eminent domain proceeding, even though because of an error, it became landlocked and consequential damages became fixed as of that date. It is argued that those damages cannot be mitigated by the State, nor can the petition be amended to agree to provide access to the tract. Certainly our Chavez decision did not intend such a result. Most eminent domain statutes fix a time as of which property taken or damaged is to be valued, the reason being that values of real estate are not constant and sometimes change greatly before the proceedings are completed. 3 Nichols on Eminent Domain (3d Ed.) § 815. Our statute is designed to avoid such problems of fluctuations in value. The amendment does not violate this purpose of the statute because it does not change the date of valuation, only the extent of the condemnation on the valuation date.

 It is true, as argued by Grenko, that in Chavez we said that the right to damages accrued on the date of the notice of possession, and that the actual value of the property taken on that date, or for damages inflicted, is fixed by the statute as the measure of damages. However, the language there employed must be considered (as it must be in every decision) in the light of the facts and circumstances that were before the court. In Chavez, the condemnee owned a store and filling station, located on State-owned land, adjacent to the highway. The State, on August 9, 1957, gave notice of the taking of complete access to the highway and did, in fact, upon completion of the highway construction, build a fence which completely cut off access from the abutting land to the highway. The question there was whether, because the contractor did not enforce the non-access during construction, and its employees freely continued to directly cross from the highway to the Chavez store, damages must be allowed for the taking of such access during that period. We said

the fact that they continued to enjoy free access did not alter the right to damages because such enjoyment was in violation of a court order for which they could have been held in contempt. The Chavez decision is distinguishable because there the taking of access was permanent while in the instant case it is only a temporary deprivation of access. The effect of the amendment is that it relates back to the date of the petition for condemnation. See Scott v. Newsom, 74 N.M. 399, 394 P.2d 253; Sellman v. Haddock, 66 N.M. 206, 345 P.2d 416. Accordingly, neither the date of the taking nor the date as of which damages are valued has been changed. Amendments of pleadings are within the sound discretion of the trial court and should be freely permitted where justice requires. Hambaugh v. Peoples, 75 N.M. 144, 401 P.2d 777; Peoples v. Peoples, 72 N.M. 64, 380 P.2d 513; and Vigil v. Johnson, 60 N.M. 273, 291 P.2d 312. We are, of course, speaking here not of the taking of direct access from the abutting land to the highway, but of the taking of all access so as to leave the tract landlocked. It is true that because the county road did not extend to the Grenko boundary line, there was a temporary taking of complete access.

 Where property is condemned for highway purposes, sufficient plans must be presented by the condemnor so the extent of the damages to the landowner may be determined. In this case, it was from this map or plan that it ultimately appeared that the county road did not actually extend quite to the Grenko line. However, even if after an award is made, the condemnor deviates from the plans to such an extent as to cause further loss to the landowner, another taking or damaging results for which just compensation must again be assessed. State v. Basin Development & Sales Co., 53 Wash.2d 201, 332 P.2d 245. On the other side of the coin, however, there is ample authority that a condemnor may unilaterally stipulate to limit the condemnor's rights in the property taken, and thus mitigate the damages. Such a unilateral stipulation may be made

after the statutory time when the right to compensation or damages has accrued. Among the cases so holding are Phoenix Title & Trust Co. v. Arizona Public Service Co., 8 Ariz.App. 221, 445 P.2d 169; MacKanin v. State, 52 Misc.2d 144, 275 N.Y.S.2d 127; and Tacoma Eastern R. R. v. Smithgall, 58 Wash. 445, 108 P. 1091, 1094, where the court said:

"* * * cases will often arise where an unanticipated claim for damages interposed by the landowner may be lessened or entirely obviated by a stipulation or waiver on the part of the condemning party. The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon."

See also State ex rel. Eastvold, v. Superior Court, 48 Wash.2d 417, 294 P.2d 418, where, after the original appropriation had become complete, and just prior to the trial to fix damages, the State determined that it did not need some of the property appropriated. The State, over the objections of the landowner, filed an amended description eliminating some of the land. In addition, the State offered evidence that consequential damages could be lessened by construction of a cattle guard which the State agreed to build. The Washington court held that the right to condemn property subject to certain easements of the landowner, so as to minimize his damages, is supported by the great weight of authority.

Because of the similarity of its situation with the one here, we agree with Mac-Kanin v. State, supra, where, after the appropriation was complete and constituted a sale and purchase which was in itself definite and irrevocable, the court, over the condemnor's objection, permitted a unilateral stipulation taking less than was originally appropriated and thus decreasing the consequential damage. The court said:

"However, when, as here, we are faced with what obviously was an honest, albeit negligent, error, the Court believes that it may have recourse to its heart as well as common sense and permit an equitable rectification of the error * *."

That the error made here was not an unreasonable one is evidenced by the uncertainty of even the Grenkos as to whether the county road did provide access to the northern tract. Their witness respecting consequential damages to the remaining land testified alternately as to the amount of such damages, depending upon whether access was in fact provided by the county road.

■ Particularly where the State or one of its political subdivisions is the condemnor, the public interest is involved as well as the interest of the owner of the property sought to be taken, and the owner ought not to be allowed a windfall where he is not entitled to it. Masheter v. Junk, 5 Ohio St.2d 254, 215 N.E.2d 381. Acceptance of the Grenkos' position would make unilateral stipulations in mitigation of damages unavailable. Neither policy nor precedent warrant such a result. State v. Basin Dev. & Sales Co., supra. See also Clark v. State, 20 A.D.2d 182, 245 N.Y.S.2d 787.

The decision in City of Albuquerque v. Chapman, 77 N.M. 86, 419 P.2d 460, does not require a different result. In Chapman, where the city condemned land for a street, entered upon it and installed a curb and gutter preliminary to paving, we said the appropriation was complete and compensation due, even though the city could have waited until platting was involved and required a dedication of the street as a condition of plat approval. The city, having chosen to proceed under eminent domain, was bound by that choice.

■ ■ The Grenkos also argue that a promise is no substitute for money compen-

sation. See Annot., 7 A.L.R.2d 364. However, the Grenkos are being compensated in money for all rights which they are losing. State ex rel. Eastvold v. Superior Court, supra. The State is merely attempting to *limit the condemnation,* a matter that is properly to be considered in determining the landowners' damages. See 7 A.L.R.2d 364, 392–393. Moreover, the Grenkos are amply protected; if the State deviates from its construction plans in a manner to cause further loss to the landowners, i.e., fails to provide the access, another taking or damaging results for which just compensation must again be assessed. State v. Basin Dev. & Sales Co., supra.

■ What we have said should make it clear that the trial court did not err in allowing the State's amendment and awarding damages based on the State's agreement to provide access to the northern tract. Sec. 22–9–56, N.M.S.A. 1953 (Supp.1967) provides for the application of the rules of civil procedure unless they conflict with the eminent domain provisions. No conflict exists here. Granting of an amendment, therefore, is within the sound discretion of the trial court. Cf. § 21–1–1(15), N.M.S.A. 1953; In re Stern's Will, 61 N.M. 446, 301 P.2d 1094. The admission of the amendment to correct an honest mistake and to prevent a windfall to the Grenkos was not an abuse of that discretion.

The case, however, should be remanded for a finding as to whether the landowners have been consequentially damaged by reason of loss of ingress and egress to the northern portion of the remaining lands between the date of the petition and construction of a connecting road between Grenkos' east boundary and the county road. In all other respects the judgment of the trial court is affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.