545 P.2d 1004

**CITY OF TUCSON, a Municipal Corporation, Appellant,**

v.

**TRANSAMERICA TITLE INSURANCE COMPANY OF ARIZONA, an Arizona Corporation, as Trustee under Trust No. 27,-281, Appellee.**

**No. 2 CA–CIV 1936.**

Court of Appeals of Arizona,
Division 2.

Feb. 11, 1976.

Rehearing Denied March 17, 1976.
Review Denied April 6, 1976.

James D. Webb, Tucson City Atty. by J. Dan O'Neill, Deputy City Atty., Tucson, for appellant.

Rees, Mercaldo & Smith, P.C. by Paul G. Rees, Jr., Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

This is a simple inverse eminent domain case which has been unduly complicated by the parties' counsel and trial court. As a result of failing to follow construction plans, the City caused a drainage channel to be cut diagonally across 10 unimproved acres located at the northwest corner of East Valencia Road and South Tucson Boulevard. Appellee then filed this lawsuit for trespass, interference with ingress and egress, and inverse eminent domain. Appellee sought injunctive relief, damages for trespass, and payment of damages for the "taking" that occurred.

The trial below was bifurcated. The court determined as a result of the first half of the trial that the City had wrongfully damaged appellee's property by caus-

ing a large ditch, intended to serve as a drainage way for water collected at the intersection of Valencia Road and Tucson Boulevard, to be dug diagonally across the property.

The second half of the trial was devoted to the issue of damages. The final judgment awarded appellee $9,500 [1] for damages to the property and ordered the City to build a drainage channel in accordance with a plan which an engineer called by appellee testified would best solve the problem at the intersection. The plan called for filling the existing ditch and re-routing the channel along the eastern boundary of the property. The trial court then found that the rechannelization would cause a deprivation of access rights and awarded appellee $36,500 for this loss of access.

Appellant did not below, and does not now complain about that part of the judgment ordering it to relocate the drainage channel. We note that the errors appellant asserts on appeal are mainly due to the very bizarre way the issues in this case were handled by all concerned. Appellant claims its theory below was that the damage to appellee's property was permanent.[2] On appeal it presents the following questions:

"1. In an inverse emenent domain action where it is alleged that a portion of a parcel of property has been taken without just compensation having been paid therefor, is it error to fail to determine the value before as the property existed prior to the taking, then find the value of the part taken, and then determine the difference between the value of the remainder before less the value of the remainder after to determine severance damages?

2. In an inverse eminent domain action where witnesses testify that a drain-

---

1. We are unable to find in the record any evidence of this amount.

2. If so, then why did it not oppose the mandatory injunction below? See, 6A Nichols on Eminent Domain Sec. 28.22 at 28–53 (3rd Ed. 1975).

age channel, if relocated so as not to bisect the property, will cause a loss of access, is it error to disregard evidence that would constitute a cure for the loss of access in mitigation of damages?

3. Did the trial court award excessive damages?

4. Where the court had previously found a taking of plaintiff's property without payment of just compensation in an inverse eminent domain action, is it error to refuse admission of an exhibit offered by the defendant municipal corporation which exhibit describes the property taken?

5. Was the verdict based on erroneous principles of damage or a result of passion or prejudice?"

Before answering the questions presented it would be best to discuss the principles of law which should have been applicable to this case.[3] Article 2, Sec. 17 of the Arizona Constitution provides ". . . No private property shall be taken or damaged for public . . . use without just compensation having first been made, or paid into court for the owner, . . ."

■ When the state damages real property, the damage is compensable under the foregoing constitutional provision. *State v. Leeson,* 84 Ariz. 44, 323 P.2d 692 (1958). It then becomes necessary to determine whether the damages are temporary or permanent, since there is a taking of the property if they are permanent and the owner is entitled to be compensated for the value of the property taken plus severance damages, if any, to the remainder. Furthermore, when the damages are permanent the landowner is not entitled to both damages and injunctive relief. *Kentucky Game and Fish Commission v. Burnette,* 290 Ky. 786, 163 S.W.2d 50 (1942); *Keck v. Hafley,* 237 S.W.2d 527 (Ky.App. 1951).

■ However, if the cause of injury to realty is abatable or preventable and the injury is capable of rectification by reasonable restoration, the cost of which does not exceed the damage to the property, the injury will be considered temporary so that a taking will not be considered to have occurred. *Alesko v. Union Pac. R. Co.,* 62 Idaho 235, 109 P.2d 874 (1941); *Alexander v. Arkansas City,* 193 Kan. 575, 396 P. 2d 311 (1964); *Sunray DX Oil Co. v. Brown,* 477 P.2d 67 (Okla.1970). The measure of damages in such instances is the reasonable expense of restoration, and, in a proper case, the loss of use or income for a reasonable time pending restoration. *Colella v. King County,* 72 Wash.2d 386, 433 P.2d 154 (1967).

■ The first issue which should have been determined after liability was established, was whether the injury was permanent or temporary. The damages to the property should have been computed by determining the difference in value of the property immediately before and after the construction of the ditch. If the cost of restoration was less than the amount of damage to the property, then the cost of restoration was the proper measure of damages. Appellee offered no evidence of the value of the property immediately after the construction of the ditch. Instead, after value was based upon the value of the property after relocating and reconstruction of the ditch. The City's position was that there was a "take" of a drainage easement and no damage to the remainder.

■ Appellee's theory below was that it was entitled to damages for the trespass, an order mandating how the drainage way was to be constructed, and then damages for its construction in the manner proposed. This theory is patently without merit. Appellee should have been awarded the cost of restoring the property to its condition prior to the construction of the

3. Appellee's theory below and on appeal is based upon "equity" rather than the principle of eminent domain. This theory was followed by the trial court. Such "equitable consid-

erations" beyond enjoining the use of the ditch are applicable since equity follows the law. *Jarvis v. State Land Department,* 106 Ariz. 506, 479 P.2d 169 (1970).

ditch and an injunction restraining the City from using its property as a drainage way. It would have then been up to the City to construct another drainage system in whatever manner it desired. If the new construction damaged the property then suit could be brought for damages, but at least the City would have been able to construct the improvements in such a way as to avoid future damage. Cf. *Colella v. King County*, supra.

■ Appellant first contends the trial court erred when it refused to strike the testimony of the landowner's appraiser. This appraiser's testimony was based on the effect of the construction of a new ditch which he claimed would deny access to the subject property on Tucson Boulevard. The appraiser's testimony which related to an "after" value based on the denial of access was improper. However, his testimony as to "before" value was proper. Appellant moved to strike *all* of his testimony and the trial court did not err in refusing to grant the motion since it embraced evidence which was admissible as well as inadmissible. 5 Nichols on Eminent Domain, Sec. 18.42[1], pp. 18–184 to 18–185 (3rd Ed. 1975); *Rose v. State of California*, 19 Cal.2d 713, 123 P.2d 505, 522 (1942).

Appellant's last contention is determinative of this appeal. It claims the trial court erred in allowing damages based on a hypothetical loss of access. We agree. As previously stated, the most appellee was entitled to receive for the temporary damage of its property was the restoration cost plus an injunction restraining further use of the ditch by the City. The court determined the temporary damage to be $9,500. Omitted from this amount was the amount of money necessary to fill the ditch with 1900 cubic yards of fill. (As previously stated we do not know where the figure of $9,500 came from but appellant does not attack this sum.) The court, instead, ordered the City to fill in the existing ditch.

We therefore affirm the following portions of the judgment: the award of $9,500, the direction to the City to fill the ditch, the injunction against the City's further use of the ditch as a drainage way, and costs to appellee. All other portions of the judgment are vacated.

KRUCKER and HATHAWAY, JJ., concur.