985 P.2d 522

**DE ALFY PROPERTIES, a California corporation;  Richard S. Kay, a single man, Plaintiffs/Appellants,**

v.

**PIMA COUNTY, a subdivision of the State of Arizona, Defendant/Appellee.**

No. 2 CA–CV 97–0050.

Court of Appeals of Arizona, Division 2, Department A.

July 16, 1998.

Ethan Steele and Jeffrey M. Neff, Tucson Attorneys for Plaintiffs/Appellants.

Barbara LaWall, Pima County Attorney.

By Thomas E. Dugal, Tucson Attorneys for Defendant/Appellee.

## OPINION

DRUKE, Chief Judge.

¶ 1 Appellants De Alfy Properties and Richard Kay appeal from the trial court's grant of summary judgment to Pima County in this inverse condemnation action. Because the parties agree the material facts are undisputed, we review the grant of summary judgment de novo to determine whether the trial court applied the law correctly. See *Gonzalez v. Satrustegui*, 178 Ariz. 92, 870 P.2d 1188 (App.1993); *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). We affirm.

¶ 2 In 1981, when Kay was the sole owner of the property in question, the Pima County Board of Supervisors authorized construction of a right of way for the west branch (drainage channel) of the Santa Cruz River and the realignment of Valley Road. At the time, Valley Road provided access to Kay's property from both the north and the south. Access from the south was cut off, however, when construction of the drainage channel was completed in February 1982. Until at least 1988, the county nonetheless planned to reestablish southern access by realigning Valley Road.

¶ 3 Kay sold the property in May 1982. Within months, the new owner had sold undivided one-half interests in the property to T.J. Corporation and De Alfy. Kay bought T.J. Corporation's interest in March 1988. Shortly thereafter, Pima County began constructing a park near Valley Road and constructed part of the park on the right of way for the realignment. It completed the park in December 1988. Appellants filed this action in December 1992, seeking compensation for the loss of southern access to the property. The trial court granted summary judgment against appellants, finding that they lacked standing to bring the action and that it was barred by the statute of limitations provided in A.R.S. § 12–526.

¶ 4 We first address whether the action is time barred. Section 12–526 provides a ten-year limitations period for inverse condemnation actions. *Busby v. State ex rel. Herman*, 101 Ariz. 388, 420 P.2d 173 (1966). The ten-year period begins to run on the date the cause of action accrues. *Id.* Generally, a cause of action accrues "when the plaintiff is first able to sue." *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979). See also *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 930 P.2d 1007 (App. 1996) (cause of action accrues when one party may sue another). In eminent domain actions that involve a property owner's right of access, the cause of action accrues when access has been cut off or substantially impaired. When "the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor." *State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 325, 350 P.2d 988, 992 (1960). See also Busby (action accrued when construction of fence completely deprived owner of freeway access). Because the drainage channel completely cut off southern access to appellants' property, their cause of action accrued and the ten-year statute of limitations began to run when the channel was completed in February 1982. Because appellants did not file the action until December 1992, it is barred by § 12–526.

¶ 5 Appellants contend, however, that the limitations period did not commence until December 1988, when the county constructed a portion of the park on Valley Road and effectively abandoned its realignment plan. Thus, they argue, construction of the drainage channel in 1982 constituted only a temporary taking, which did not become permanent until the county abandoned the Valley Road realignment in 1988. In support of their argument, appellants rely on *County of Mohave v. Chamberlin*, 78 Ariz. 422, 281 P.2d 128 (1955), and *City of Tucson v. Transamerica Title Insurance Co.*, 26 Ariz.App. 42, 545 P.2d 1004 (1976). Their reliance on those cases is misplaced. Although the cases distinguish between temporary and permanent takings, that distinction pertains only to

the measure of damages in an eminent domain action, not to when the action accrues.

¶ 6 In *Chamberlin*, the plaintiff claimed the county's sewage effluent had overflowed onto her property and damaged her well. The jury awarded the plaintiff damages and the county appealed, contending the trial court had improperly instructed the jury that the measure of damages was the diminished value of the property. The supreme court agreed the instruction was improper because

there was no permanent "taking" of plaintiff's property. There was no showing that plaintiff's well was permanently contaminated, nor was there a showing ... that the overflow of sewage effluent onto plaintiff's land was an event of ... recurring character. The single occurrence on which plaintiff relies falls far short of meeting such a test. Since there was no permanent injury shown[,] the evidence as to diminished value of the property was inapplicable and the giving of an instruction applying such a yardstick constituted reversible error.

*Id.*, 78 Ariz. at 428, 281 P.2d at 132. After noting that article 2, § 17, of the Arizona Constitution requires compensation for private property that is either "taken or damaged," the court stated:

[The plaintiff should] be given an opportunity to amend her complaint on the theory of a "damaging" of her property as distinct from its "taking". . . . [F]or a "damaging", or as some of the courts term it, a "temporary taking", an entirely different yardstick to the one used in the instant case applies.

*Id.* at 430, 281 P.2d at 133.

¶ 7 Similarly, this court's discussion of permanent and temporary takings in *Transamerica Title* related only to the property owner's measure of damages. There, we said a permanent taking entitles the owner "to be compensated for the value of the property taken plus severance damages, if any, to the remainder" and, for a temporary

taking, "[t]he measure of damages ... is the reasonable expense of restoration, and, in a proper case, the loss of use or income for a reasonable time pending restoration."[1] 26 Ariz.App. at 44, 545 P.2d 1006.

¶ 8 We thus conclude, based on *Busby* and *Thelberg*, that appellants' inverse condemnation action accrued when southern access to their property was cut off by construction of the drainage channel in 1982. We reach this conclusion even though the county planned to reestablish southern access by realigning Valley Road. The planned realignment did not toll the running of the ten-year limitations period, but could mitigate appellants' damages, as *Thelberg* makes clear. "The damages for [impaired access] may be merely nominal or they may be severe. Other means of access ... may be taken into consideration in determining the amount which would be just under the circumstances ... but do[ ] not constitute a defense to the action however." 87 Ariz. at 325, 350 P.2d at 992 (citations omitted). To avoid being time barred, appellants had to file their action for the impaired southern access within ten years of the date the drainage channel was completed. In response, the county could have attempted to mitigate appellants' claimed damages by showing it had plans to reestablish southern access by realigning Valley Road. Then, when the county later abandoned the realignment, appellants could have brought a new action for any damages that had resulted from the county's change of plans. "A change of plans may give rise to a cause of action ... where the change results in elimination of some feature which, although itself non-compensable, was considered in mitigation of some compensable element of damage." *Olson v. State*, 12 Ariz.App. 105, 108, 467 P.2d 945, 948 (1970).

¶ 9 Appellants argue, based on *Olson* and case law from other jurisdictions,

---

1. Here, however, the measure of damages is not whether access has been temporarily or permanently impaired, nor the value of the right of access. Rather, the measure of damages is "the difference in the value of the remaining property before and after the access thereto has been

destroyed or impaired." *Thelberg*, 87 Ariz. at 325, 350 P.2d at 992. See also *State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 467 P.2d 66 (1970); *State ex rel. Herman v. Wilson*, 103 Ariz. 194, 438 P.2d 760 (1968).

that the county's abandonment of the Valley Road realignment in 1988 gave rise to a new cause of action and, thus, that their action was timely filed in 1992. We disagree. Although a governmental change of plans gives rise to a new cause of action, *Olson* makes clear that the new cause of action is predicated on a prior condemnation action in which the plans had been considered in mitigation of damages. "[R]ecovery may be had in a subsequent action where the construction plans admitted into evidence in the condemnation suit provided mitigating features as against an item of compensable damage." 12 Ariz.App. at 108, 467 P.2d at 948. This requirement of a prior condemnation action is also supported by the cases appellants cite from other jurisdictions, *Alsop v. State*, 586 P.2d 1236 (Alaska 1978); *Mainer v. Canal Authority*, 467 So.2d 989 (Fla.1985); *State ex rel. State Highway Commission v. Grenko*, 80 N.M. 691, 460 P.2d 56 (N.M.1969). In both *Alsop* and *Grenko*, the state had agreed in prior condemnation proceedings to include access to the owners' property in the state's highway construction project. When the state later changed its plans and reduced or eliminated access, both cases held that the owners had a cause of action for any additional damages they might have suffered. In *Alsop*, the court stated:

> When the plan was implemented and then altered, appellants became entitled to just compensation for any further, resultant economic interference with their property.
>
> We hold that in order to recover damages, each of the appellants must demonstrate that he ... had a portion of his property taken for the original construction project, that he ... relied on [access] in settling or receiving an award for their condemnation claims, and that his remaining property has decreased in value as a result of the highway modifications.

586 P.2d at 1240 (footnotes omitted). Similarly, in *Grenko*, the court stated that, if the state deviates from its plans after the condemnation award "to such an extent as to cause further loss to the landowner, another taking or damaging results for which just compensation must again be assessed." 460 P.2d at 58. Finally, although dictum, the court made the following statement in *Main-*

*er* while holding that the canal authority was not required to reconvey property it had acquired for a planned canal when it later abandoned the plan: "[I]f a condemning authority claimed enhancement to offset damages to the remaining property, and then failed to complete the improvement, the property owner would have a cause of action for additional compensation, but not for reconveyance absent a showing of bad faith at the time of the taking." 467 So.2d at 992. Accordingly, we find that, because appellants did not previously file an inverse condemnation action in which the county submitted the planned realignment in mitigation of damages, they have no cause of action for the county's subsequent change of plans abandoning the realignment.

¶ 10 Appellants nonetheless argue that, because the county relied on the realignment to mitigate the landowners' damages in *Pima County v. Palos Companies Unlimited*, 140 Ariz. 481, 682 P.2d 1148 (App.1984), the county is judicially estopped to deny it had planned to realign Valley Road. Judicial estoppel does not apply here, however, because appellants were not parties in *Palos*. Generally, " 'a party who has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a subsequent proceeding involving *the same parties* and questions.' " *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996), quoting *Martin v. Wood*, 71 Ariz. 457, 459, 229 P.2d 710, 711–12 (1951) (emphasis added).

¶ 11 Appellants further argue that the county was equitably estopped to "deny that its removal of Valley Road in 1981–82 was temporary only." Equitable estoppel, however, requires justifiable reliance before it applies. See *Carlson v. Arizona Dep't of Econ. Sec.*, 184 Ariz. 4, 906 P.2d 61 (App.1995). We cannot say appellants could justifiably rely on the planned realignment after it was abandoned in December 1988. Thereafter, they had more than three years in which to timely file their inverse condemnation action but failed to do so.

¶ 12 Finally, appellants make two public policy arguments in support of their appeal,

both of which rely on the distinction appellants draw between a temporary and permanent taking. Because we have already determined that the distinction has no application here, we reject appellants' policy arguments.

¶ 13 We affirm the trial court's grant of summary judgment against appellants on the ground that the ten-year statute of limitations in § 12–526 bars their inverse condemnation action. Accordingly, we need not address whether they had standing to bring the action. In our discretion, we deny the county's request for attorney's fees on appeal.

CONCURRING: JOHN PELANDER, Presiding Judge, and M. JAN FLOREZ, Judge.