JOHN FOLEY, Appellant, v. THE CITY OF CEDAR RAPIDS, Iowa, Appellee, and JOHN FOLEY, Appellant, v. THE CITY OF CEDAR RAPIDS, Iowa, Appellee.

**Appeal:** FILING OF PLEADING: *nunc pro tunc* ORDER. Where a pleading is treated by all parties to the action and by the court as having been filed it cannot be contended on appeal that it was not filed because not entered upon the appearance docket; and no prejudice arises from a *nunc pro tunc* order directing its entry.

**Municipal corporations:** CLAIMS FOR DAMAGES: TIME FOR FILING. To authorize suit against a special charter city upon an unliquidated demand, notice of the demand need not be filed with the recorder within thirty days from the date on which the cause of action accrued; it is timely if filed thirty days prior to commencement of action.

**Appeal:** MOTION TO DISMISS: REVIEW. Although the court may be justified in refusing to receive further evidence after sustaining a motion to dismiss the action, yet where the ruling is based on the ground that plaintiff's action is barred, thus causing him to elect between testing the correctness of the ruling and dismissing the case before submission to the jury, the question of limitation of the cause of action will be reviewed on appeal.

**Municipal corporations:** ACTIONS AGAINST: TIME OF COMMENCEMENT: EVIDENCE. An action against a special charter city for unliquidated damages caused by a change in the grade of a street is in time if commenced within three months from the date of completion or abandonment of the work. Evidence held to show timely commencement of the instant action.

*Appeals from Linn District Court.*— HON. J. H. PRESTON, Judge.

FRIDAY, JANUARY 11, 1907.

PLAINTIFF brought action against defendant to recover damages by reason of a change of grade of a street in front of his premises. At the conclusion of the testimony,

the trial court directed a verdict for defendant upon the ground that plaintiff delayed bringing his action for more than three months after the cause thereof accrued and did not file a statement of his claim with the city recorder thirty days before the commencement of his suit as provided in sections 1050 and 1051 of the Code. Judgment was rendered accordingly, and plaintiff appealed. After the appeal was taken defendant filed in the lower court, a motion for a *nunc pro tunc* order showing the filing of an amendment to the answer, pleading the aforesaid statutory limitation, claiming that this amendment was, in fact, filed with the clerk before the motion to direct the verdict was submitted, was treated by all parties as filed and the case tried as if it were filed, but that the clerk, through oversight, neglected to enter the filing of the same upon the appearance docket. This motion was supported by affidavit, and, upon submission to the court, was sustained, and the clerk was directed to enter upon the appearance docket an entry showing the filing of the amendment to the answer as of date May 5, 1905. From this order, plaintiff also appeals. The case first noted in the caption is the original one, and the other is the appeal from the ruling on the motion for a *nunc pro tunc* order. The two cases will be disposed of in one opinion. First case *reversed,* second case *affirmed.*

*Crosby & Fordyce,* for appellant.

*James W. Goode,* for appellee.

DEEMER, J.— We shall first dispose of the last case, viz., the appeal from the order sustaining the motion to correct the record by showing the filing of the amendment to the petition as of date May 5, 1905. The ruling made by the trial court upon this motion was as follows: " January 30, 1906. Upon petition to correct record, it is found that, on May 5, 1905, defendant asked and has

1. APPEAL: filing of pleadings: *nunc pro tunc* order.

leave to amend answer by pleading the statute of limitations; that plaintiff on said day replied to said amendment; that the issue raised by said amendment and reply was made just as the cause was called for trial and used and acted upon by both parties and the court the same as though filed, without knowledge by the court that the same had not been marked 'filed' and entered upon the appearance docket. It is therefore ordered that the record be corrected by showing the filing of said amendment on May 5, 1905, in accordance with the action of the parties and the court." The finding of facts recited therein is amply sustained by the evidence and by the record upon the trial of the original case now before us. This being true, it is really immaterial whether the entry upon the appearance docket is made now for then or not. As the pleading was treated by all the parties as filed, and as the case was tried upon the theory that it was filed, plaintiff cannot now be heard to say that no such pleading was filed because not entered upon the appearance docket. *Long v. Valleau,* 87 Iowa, 683; *Davis v. Railroad,* 83 Iowa, 744; *Gregory v. Bowlsby,* 126 Iowa, 588, and other like cases. As the paper was treated by all parties as filed, and so considered and acted upon by them, no prejudicial error resulted from the order of the trial court directing an entry on the appearance docket *nunc pro tunc,* showing the filing of the amendment.

Coming now to the main case we find it to be an action wherein plaintiff charged that defendant caused to be constructed in the street in front of plaintiff's property an ap-

2. MUNICIPAL CORPORATIONS: claims for damages: time for filing. proach to a viaduct in said street made of earth with a brick paving on the surface which raised the level of the street above the lot upon which plaintiff's buildings and improvements were situated, destroying his sidewalk, removing the trees, and rendering access to his property dangerous and difficult. He claimed that within thirty days after the approach was constructed he presented his claim to the city recorder as provided by law.

Defendant interposed many defenses but as it now relies upon one or two, those only will be noticed. Code, sections 1050, 1051, provide, in substance, that, "no suit shall be brought against any such city on any unliquidated claim and demand, unless within three months from the time the same became due or the cause of action accrue thereon, and not then unless a written verified statement of the general nature, cause and amount of such claim is filed with the recorder thirty days before the commencement of such suit." The motion to direct a verdict was sustained upon the ground: First, that the action was not brought within three months from the time the cause of action accrued; and second, that the verified statement was not filed within thirty days after the completion of the approach. There is nothing in the last proposition. The action must be commenced within three months after the cause thereof accrued, but the claim need not be filed within thirty days thereafter. The filing of the claim must be at least thirty days before suit is brought in order that the city may have time to properly investigate the matter, and, if found a just demand, pay it before the expense of a lawsuit is imposed upon it. *Kenyon v. City,* 124 Iowa, 195. The action must be brought within three months from the time the cause thereof accrues in any event, but it cannot be brought unless the city has had thirty days' notice by the filing of the claim, within which to investigate it. Plaintiff's verified claim was filed with the City Clerk May 16, 1903, and the action was commenced June 22, 1903, so that the notice imparted by the filing of the claim was sufficient.

The only other question in the case is this, was the suit commenced within three months from the time the action thereon accrued. This, of course, depends upon the facts **3. APPEAL: motion to dismiss: review.** disclosed. When plaintiff purchased his property something like ten years ago, it was level with the street, and a little higher than the curb or sidewalk line. Some time in the year 1891, the city council of defendant city declared that a viaduct upon and along Avenue

A of said city and across the railway tracks on Fourth street was necessary for the safety and protection of the public and might, at any time, by resolution require the construction and keeping in repair of such viaduct according to approved plans and specifications. In the year 1901 the city by resolution approved of certain plans and specifications for the construction and maintenance of the viaduct. It further appears that in March of the year 1902, the city entered into a contract with the Chicago & Northwestern Railway Company for the construction of the viaduct according to the plans and specifications. Pursuant to this contract the railway company constructed the viaduct and the approaches thereto, one of which is in front of plaintiff's property, increasing the height of the street in front thereof some seven or eight feet. Plaintiff said that the grading was done in front of his property during the summer months of the year 1902, and that it was about the same height all the time after the first grading except a little settling. Another of plaintiff's witnesses said that the embankment and curbing were put in before the paving was done, and that the embankment stood all winter before the paving was put in. According to some of the testimony the curbing which was put in in the fall of 1902 was a temporary one, and there is some testimony as to filling outside the curb in the spring of 1903. Defendant's testimony tended to show that the grading and curbing was done in the fall of the year 1902, the street being brought to what was known as a " sub-grade " for the paving during that year, although the paving was not completed until some time between April first and tenth of the year 1903.

Thus the record stood when defendant filed its motion for a directed verdict.

The motion was submitted and sustained on Saturday, May 6, 1905. On the succeeding Monday morning plaintiff asked leave to introduce further testimony as to when the curbing and grading was done and proposed to show that the

curb was set the latter part of April or the fore part of May, 1903, and that the street, grade, and curb were completed in April or May, 1903, and that the actual height of the grade was not established until April of the year 1903. We now quote from the record: " (Defendant objects to the offer as incompetent and immaterial under the issues and because the case was closed Saturday and motion to direct verdict sustained.) By the Court: The objection will be sustained, it appearing by plaintiff's own evidence that this work was done according to plans and specifications and that the embankment, which was completed so far as the embankment was concerned, not as to paving or sidewalk, in the fall of 1902, and his cause of action then accrued to recover his damages, if any, and that was more than three months prior to the beginning of this action."

The trial court was justified in refusing to receive the testimony offered after it had passed upon the motion to direct a verdict, but, as it placed its ruling upon another ground, and thus caused plaintiff to elect between testing the correctness of this ruling or dismissing his case before submission to a jury, the case should be disposed of upon the ground assigned.

We are constrained to hold that the trial court was in error in not receiving the additional testimony offered by plaintiff, and with this admitted, was also in error in directing the

**4. MUNICIPAL CORPORATIONS: actions against: time of commencement: evidence.** verdict in defendant's favor. The construction of the viaduct and its approaches, the setting of the curbing, the paving of the approaches, the filling outside the curb line, and the replacing of the sidewalk were all parts of one improvement, to wit, the construction of the viaduct and its approaches, and plaintiff, who had not been compensated therefor before the work was commenced, was justified in waiting until the improvement was completed before commencing his action. Until it was completed, there was no method for determining how much his property might be damaged. It was the

physical change in the grade of the street which caused the damage, and not the mere threat to make it, and plaintiff's damages growing out of this change were indivisible. *Hempstead v. City of Des Moines,* 63 Iowa, 36; *Buser v. City of Cedar Rapids,* 115 Iowa, 683; *Kelleher v. Railway Co.,* 97 Iowa, 144. None of these cases are exactly in point, but they each announce principles which are controlling in the solution of the matter now before us. Surely plaintiff cannot recover damages for each load of dirt hauled in front of his premises, nor for each brick laid in the pavement or in the sidewalk, or for each time a section of a curb is placed in front of his lot. As the damages in such cases are indivisible, he was justified in waiting until the entire improvement was completed, or as said in Buser's case, *supra,* until the work is completed or the city has ceased its operations for such a length of time as to make it appear that the work is completed. A jury would have been warranted in finding that the work in this case was not completed until about the 1st day of April, 1903. This action was commenced in June of the same year, and within three months from the time the cause of action accrued by the completion of the work. Such a case as this is clearly distinguishable from one where damages are assessed in advance or where there are several independent and distinct wrongs. Here there was but one improvement and no one could tell the amount of plaintiff's damages until that improvement was substantially completed; the wrong was a continuing and connected one and the damages were indivisible, hence the cause of action did not accrue within the meaning of that term as used in the statute relied upon until work was either completed or abandoned. The provision of the statute requiring the filing of a statement of the nature, cause, and amount of the claim thirty days before the commencement of the suit, adds strength to the conclusion reached. Until the contemplated work was substantially completed no one could tell the amount of his damages. The resolution to do the work did plaintiff no

damage. It was the physical change in the condition of the street which did that, and, until that change was fully made, no one could tell the amount of damages to which plaintiff would be entitled.

For the errors pointed out, the judgment must be, and it is, reversed. Each party will pay one-half the costs of this appeal. The result is that the first case must be *reversed;* and the second case *affirmed.*