[No. 28710. Department One. August 21, 1942.]

R. G. GILLAM, as *Administrator, Respondent,* v. THE CITY OF CENTRALIA, *Appellant.*[1]

[1]Reported in 128 P. (2d) 661.

*Geo. C. Ellsbury,* for appellant.

*J. O. Davies,* for respondent.

DRIVER, J.—This is an action to recover compensation for damage to real property, by deprivation of access, light, and air, caused by the construction of a viaduct, or overcrossing, to separate the grade of a certain street in the city of Centralia from the grade of an intersecting railroad. The court, after trial without a jury, entered findings, conclusions, and judgment in favor of the plaintiff, and defendant city has appealed.

In the lower court, by demurrer and by answer, the issue was raised that the action had not been commenced within the time limited by law. That is the principal question presented on the appeal. It has a dual aspect, namely, (1) what statute of limitations applies; and (2) when did the statute begin to run?

■ Respondent asserts that the action is governed by the three-year statute, while the appellant contends that the two-year catch-all statute is controlling. The two statutes, in so far as we need consider them here, read as follows:

"Within three years:
"1. An action for waste or trespass upon real property; . . .
"3. An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . ." Rem. Rev. Stat., § 159 [P. C. § 8166].

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued." Rem. Rev. Stat., § 165 [P. C. § 8172].

In support of its position, appellant cites *Denney v. Everett,* 46 Wash. 342, 89 Pac. 934, *State ex rel. Whitten v. Spokane,* 92 Wash. 667, 159 Pac. 805, and *White v. King County,* 103 Wash. 327, 174 Pac. 3—all of which held that the two-year statute of limitations applied to an action against a municipality for damage to abutting property resulting from a change in grade of a street or highway. They were cited and followed in the later case of *Island Lime Co. v. Seattle,* 122 Wash. 632, 211 Pac. 285. That was an action by a real property owner to recover for damage from slides caused by the removal of lateral support in the regrading of a city street. Each of the foregoing decisions was based upon the premise that the property owner's right of action against the municipality was one sounding in tort, and the court did not consider any portion of the three-year statute except subd. 1, relative to waste or trespass upon real property. As there had been no actual taking or direct physical invasion of the property, the court held that the action did not come within

that subdivision, and therefore concluded that the three-year statute did not apply. In none of the cases did the court consider the applicability of subd. 3 of the three-year statute.

In *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662, this court had held that a landowner's suit to recover compensation for damage resulting from the operation of an incinerator by a city was an action on an implied contract or liability within subd. 3. Judge Parker, the author of the opinion, pointed out very clearly that, when a city, in the exercise of its power of eminent domain, damages private property for public use, an action brought by the owner of the property against the city is not a tort action, but is based upon the implied promise of the city to compensate the owner, as the constitution expressly requires it to do.

Then subsequently, without mentioning *Jacobs v. Seattle,* both the *White* case and the *Island Lime Company* case followed the earlier tort theory decisions upon which appellant here relies. But all this was prior to the leading case of *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645. There, the city, in the regrade of one of its streets, caused slide damage to adjacent property. It was held that the taking and damaging of such property was in contravention of the owner's constitutional rights, and that it was not necessary for him to file a claim for damages against the city as a condition precedent to suit, as he would have been required to do in an action based upon acts of the city of a tortious nature only.

*Marshall v. Whatcom County,* 143 Wash. 506, 255 Pac. 654, was decided at the same time as *Wong Kee Jun v. Seattle,* and Judge Tolman wrote the opinions in both cases. The *Marshall* case also was one in which property had been damaged by slides caused by the regrade of a city street, and the question arose as to

whether the landowner's action came within the two-year or the three-year statute of limitations. Judge Tolman gave this concise and definite answer, p. 507:

"Those cases which apply the two-year statute are *Island Lime Co. v. Seattle*, 122 Wash. 632, 211 Pac. 285, and the cases there cited, which are based upon the tort theory, and since we held in the *Wong Kee Jun* case that the tort theory cannot be applied in any case where the right invaded is protected by the constitution, it follows logically that the three-year statute is the only one applicable. It was so held in *Jacobs v. Seattle*, 100 Wash. 524, 171 Pac. 662, L. R. A. 1918E 131, and we think that logically there is no escape from the conclusion that the two-year statute of limitations cannot be applied where the taking is by reason of the sovereign power, as held in the *Wong Kee Jun* case."

In *Docksteader v. Centralia*, 3 Wn. (2d) 325, 100 P. (2d) 377, we held that the depriving of a landowner of access to his tract, by the construction of the identical viaduct involved in the present case, was a taking or damaging of private property within the constitutional inhibition. Since we have already decided in the *Docksteader* case that the taking or damaging now under consideration is one for which the constitution requires compensation to be made, it follows that, under the authority of *Marshall v. Whatcom County, supra*, the third subdivision of the three-year statute of limitations applies.

■ Having concluded that the three-year statute governs the case at bar, we shall now consider when the statute started to run. The viaduct, or overcrossing, was built pursuant to an agreement between appellant city, the state, and the railroad company, by the terms of which agreement the city undertook to furnish the necessary right of way. The actual construction was done by a private contractor under a contract with the state. The contract describes the work as

" . . . clearing, grading, draining, surfacing with crushed stone and constructing a bituminous surface treatment and a reinforced concrete and steel over-crossing and treated pile and timber trestle, on City Street, Railroad Overcrossing on Sixth Street in the City of Centralia, . . ."

The viaduct runs east and west on Marion street, and the pile and timber trestle on the easterly approach extends across the entire southerly front of respondent's lot. Work was started by the contractor in July, 1936; the driving of the piling on the easterly approach was finished in September or early October; and all the concrete had been poured by April 2, 1937. The resident engineer of the state highway department testified that "The bridge was entirely completed the 7th of May, 1937, . . . Everything except some minor repairs. . . ." However, he also said that the approaches within the retaining walls were surfaced and oiled in the early part of June and were again treated with oil around the first of July. On cross-examination, the witness stated that the contract was completed July 2, 1937, and that the work was accepted by the state on July 21, 1937.

Another state highway department employee, an engineer-inspector on the work, testified that the bridge structure was completed around May 7, 1937, but, on cross-examination, in response to the question, "The contract was not completed until at least July 2, 1937?" answered, "That was the date of completion as far as our office was concerned, was July 2, 1937." He further testified it was quite possible that at least a dozen men were working on the job after May 7th and up until July 2nd.

Another witness, called by appellant, a former tenant of respondent's premises, when asked, "Do you of your own knowledge know about the time that structure

was completed?" responded, "Well, it was some time in July, I don't know the dates."

Respondent called as a witness a workman who had worked on the construction of the viaduct continuously from the fall of 1936 until "Right around before the Fourth of July" of the following year. He stated that the last work done was retarring and resurfacing the road leading to the viaduct, and that the middle of June, 1937, "We put in the fire walls." The fire walls, it seems, consist of heavy planking attached to the piling underneath the ceiling of the viaduct. The trial court found that the viaduct was completed after July 2, 1937, and we think the evidence preponderates in favor of the finding. Respondent commenced the instant action by the filing of his complaint on June 5, 1940.

No case has been called to our attention in which we have passed upon the precise question under consideration. In a number of other jurisdictions, it has been held that, where a municipality, without condemnation proceedings, takes or damages private property for a public improvement, the statute of limitations does not commence to run against the property owner's right of action for compensation until construction of the improvement has been *entirely* completed or until operations thereon have ceased for such a period of time as reasonably to indicate that the project has been abandoned. *Foley v. Cedar Rapids,* 133 Iowa 64, 110 N. W. 158; *Bigham Bros. v. Port Arthur Canal & Dock Co.,* 59 Tex. Civ. App. 367, 126 S. W. 324; *Southern R. Co. v. Leake,* 140 Va. 438, 125 S. E. 314; *Ashman v. Des Moines,* 209 Iowa 1247, 228 N. W. 316; *Tulsa v. Springfield Life Ins. Co.,* 157 Okla. 218, 11 P. (2d) 493.

Perhaps the clearest statement of the reason for the rule in the cited cases appears in *Foley v. Cedar Rapids.*

There, the city had constructed a viaduct across certain railway tracks, and, in so doing, had raised the grade of the street in front of plaintiff's property. With reference to when the applicable statute of limitations commenced to run against plaintiff's right of action for compensation, the supreme court of Iowa said, p. 69:

"The construction of the viaduct and its approaches, the setting of the curbing, the paving of the approaches, the filling outside the curb line, and the replacing of the sidewalk were all parts of one improvement, to wit, the construction of the viaduct and its approaches, and plaintiff, who had not been compensated therefor before the work was commenced, was justified in waiting until the improvement was completed before commencing his action. Until it was completed, there was no method for determining how much his property might be damaged. It was the physical change in the grade of the street which caused the damage, and not the mere threat to make it, and plaintiff's damages growing out of this change were indivisible."

It is our conclusion that respondent's action was commenced within three years from the final completion of the viaduct, and was therefore brought within the time limited by law.

Appellant also seems to question the capacity of the respondent, as administrator of the estate of his deceased wife, to prosecute the action.

The land involved was the community property of respondent and his wife. On February 5, 1937, she conveyed it to respondent by quitclaim deed for the stated consideration of "love and affection." She died May 7th, and the deed was placed of record on May 12th. The right to damages for an injury to property is a personal right belonging to the owner, which will not pass by deed unless expressly conveyed. *In re Seattle*, 26 Wash. 602, 67 Pac. 250. See, also, *In re*

*Twelfth Avenue South,* 74 Wash. 132, 137, 132 Pac. 868, and *Seattle Savings & Loan Ass'n v. King County,* 189 Wash. 563, 65 P. (2d) 1274.

■ In the case at bar, the contract for the viaduct had been entered into, and the main features of the improvement had been constructed, prior to the execution of the quitclaim deed. As stated in the trial court's findings of fact, the damage to the land had been substantially completed by that time. The right to compensation had vested in the marital community, although it was not possible then to determine definitely what the full extent of the damage would be, and the statute of limitations did not commence to run until the project was *entirely* finished. As the deed contained no assignment of the right to damages, such right did not pass to the husband, but remained the property of the community. Upon the death of the wife, it became subject to probate and passed to the control of the administrator of her estate. *In re Guye's Estate,* 54 Wash. 264, 103 Pac. 25; *Crowe & Co. v. Adkinson Const. Co.,* 67 Wash. 420, 121 Pac. 841. Respondent, as such administrator, had the right to maintain the action.

■ Finally, appellant complains that the damages awarded by the trial court are excessive.

The tract in question has a frontage of 129.71 feet on the northerly side of Marion street and 38.8 feet on the westerly side of Windsor avenue. It widens out toward the west, having a frontage of 87.02 feet on the alley. At the time the viaduct was built, the tract was improved by a wooden store building, about 34 by 40 feet, a five-room dwelling, and a combination woodshed and garage. The viaduct takes up practically the whole of Marion street in front of respondent's lot, and is approximately 14 feet in height. It interposes an im-

passable barrier on the south side of the tract and very materially affects access to light and air. Without question, the value of the property for business purposes has been wholly destroyed and its value for residential use greatly reduced.

Appellant called as witnesses four experts on real estate values. Their estimates of the damages ranged from $750 to $1,200. Respondent testified that the damages amounted to $3,750, and a real estate expert testified for respondent that, in his opinion, the property, which previously had been worth $3,000 to $3,500, had been depreciated to the extent of three-fourths of its value by the construction of the viaduct. The trial court not only heard and observed the witnesses, but viewed the premises as well. We are unable to say that the award of $1,550 damages to respondent was excessive.

Judgment affirmed.

ROBINSON, C. J., MAIN, STEINERT, and MILLARD, JJ., concur.