75 P.3d 194

**C & G, INC., Plaintiff–Respondent,**

v.

**CANYON HIGHWAY DISTRICT NO. 4, Defendant–Appellant.**

No. 28128.

Supreme Court of Idaho,
Boise, May 2003 Term.

July 29, 2003.

White, Peterson, Morrow, Gigray, Rossman, Nye & Rossman, P.A., Nampa, for appellant. William F. Gigray III argued.

Davison, Copple, Copple & Cox, Boise, for respondent. Heather A. Cunningham argued.

KIDWELL, Justice.

C & G, Inc. (C & G) sued the Canyon Highway District No. 4 (Highway District) for inverse condemnation after the Highway District built a road through C & G's property without compensating C & G. The Highway District defended on the ground C & G failed to file its case within the statute of limitations period. However, the district court found the statute of limitations was not triggered until the Highway District completed the construction project, which brought C & G's suit within the four-year limitation period. The Highway district failed to prove its other affirmative defenses and C & G was awarded damages, together with costs and attorney fees. The Highway District filed this appeal. The judgment of the district court is affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

C & G owns and operates a farm on 260 acres in Canyon County, Idaho. Martin Galvin (Martin) and Patricia Galvin (Patricia), husband and wife, are the only shareholders of C & G, each owning 50% of C & G's shares. The Old Middleton Road, a winding road with two very sharp curves, ran north and south along the western edge of C & G's property. By the early to mid 1980's, the condition of the Old Middleton Road had deteriorated to the point that it was necessary to rebuild and resurface it. At various times between the mid 1980's and early 1990's, Martin and representatives of the Highway District discussed the possibility of moving the Old Middleton Road east so it would follow the north/south section line running through C & G's property.

Based on a 1921 resolution by the Canyon County Commissioners, the Highway District believed it had a 50 foot easement, 25 feet on each side, over the section line. As a result of the alleged easement, the Highway District assumed it could build a road over the section line crossing C & G's property without compensating C & G. C & G believed the Highway District's representations regarding the easement without investigating further. In late 1991, the Highway District contracted with a surveyor to mark the location of a proposed New Middleton Road, which was to run north/south along the section line running through C & G's property. On December 24, 1991, the Highway District's Board of Commissioners (Commissioners) approved construction of New Middleton Road. Due to the alleged easement, none of the affected property owners were compensated for their land.

Construction of the New Middleton Road began in January 1992. Patricia objected to construction of the road at all times relevant. According to the Highway District, Martin was involved in different aspects of the construction project, particularly in the relocation of irrigation canals required by the construction. In order to lessen the road's grade, the Highway District asked C & G to grant more than the 50–foot easement along a portion of the road that traversed a steep hill on C & G's property. C & G refused the Highway District's request. By October 16, 1992, construction had progressed to the

point that the New Middleton Road's alignment and width across C & G property were established. By November 6, 1992, the Highway District completed construction of the road's subbase. The New Middleton Road was opened for public use in May 1993, but paving and oiling was not completed until August 1993.

In January 1997, C & G approached a surveyor about developing its property. At that time, C & G learned there was no easement for the road. On January 31, 1997, C & G filed suit against the district seeking damages for inverse condemnation. On September 24, 1998, the Highway District filed a motion for summary judgment on the ground the applicable four-year statute of limitations, Idaho Code § 5–224 (2002), ran before C & G filed its complaint. On November 18, 1998, the district court granted the Highway District's motion for summary judgment on the basis that, by November 6, 1992, construction on the road had progressed to the point that C & G was aware of the nature and extent of the taking of its property, triggering the limitation of action and placing C & G's complaint beyond the four-year period.

On November 24, 1998, C & G filed a motion to reconsider, citing additional authority for the proposition that the statute of limitations did not begin running until May 1993, when the road was opened for public use. On January 13, 1999, the district court granted C & G's motion for reconsideration on the ground the statute of limitations was not triggered until the Highway District completed construction of the road, which brought C & G's complaint within the time period.

The parties stipulated to the facts of the case, including that the Highway District took 3.16 acres of C & G's property for purposes of constructing the New Middleton Road. On December 20, 1999, the district court conducted a bench trial on the issues of the Highway District's affirmative defenses of equitable estoppel, quasi estoppel, and waiver. On January 3, 2000, the district court entered its decision finding the Highway District failed to prove any of its affirmative defenses. On December 3, 2001, a jury trial began on the issue of the value of C & G's condemned property. On December 12, 2001, based on the jury's verdict, the district court entered a judgment in favor of C & G in the amount of $430,204.64. On February 21, 2002, the district court entered a judgment awarding attorney fees and costs to C & G.

The Highway District timely filed this appeal.

## II.

### STANDARD OF REVIEW

The date for when a cause of action accrues may be a question of fact or law. *Jemmett v. McDonald,* 136 Idaho 277, 279, 32 P.3d 669, 671 (2001) (citing *Reis v. Cox,* 104 Idaho 434, 660 P.2d 46 (1982)). If no disputed issues of material fact exist, when a cause of action accrues is a question of law for determination by this Court. *Id.*

This Court will only set aside the district court's findings of fact if clearly erroneous. I.R.C.P. 52(a) (2002); *McCray v. Rosenkrance,* 135 Idaho 509, 513, 20 P.3d 693, 697 (2001); *In re Williamson v. City of McCall,* 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). In deciding whether findings of fact are clearly erroneous, this Court determines whether the findings are supported by substantial, competent evidence. *In re Williamson* at 454, 19 P.3d at 768. Evidence is substantial and competent if a reasonable trier of fact would accept it and rely on it. *Id.* Findings based on substantial, competent evidence, even if conflicting, will not be disturbed on appeal. *Bolger v. Lance,* 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002).

## III.

### ANALYSIS

A. **C & G's Action For Inverse Condemnation Is Not Time Barred By The I.C. § 5–224 Limitation Of Action.**

Neither party disputes the facts of this case. Therefore, whether C & G filed its inverse condemnation lawsuit within the stat-

ute of limitations is a question of law over which this Court exercises free review.

I.C. § 5–224 contains the statute of limitations for an inverse condemnation claim. *Wadsworth v. Dep't. of Transp.*, 128 Idaho 439, 441–42, 915 P.2d 1, 3–4 (1996) (citing *McCuskey v. Canyon County Comm'rs*, 128 Idaho 213, 912 P.2d 100 (1996)). I.C. § 5–224 states: "[a]n action for . . . [inverse condemnation] . . . must be commenced within four (4) years after the cause of action shall have accrued."

The Highway District argues the district court erroneously relied on the project completion rule of *Farber v. State*, 102 Idaho 398, 630 P.2d 685 (1981), to determine when a claim for inverse condemnation accrues. According to the Highway District, *Farber*, a case addressing the issue of when the notice provision of the Idaho Tort Claims Act (ITCA) is triggered, has no application in this case. The Highway District argues under *Tibbs v. City of Sandpoint*, 100 Idaho 667, 671, 603 P.2d 1001, 1005 (1979), a claim for inverse condemnation accrues when a property owner is aware of the nature and extent of his or her damages. The Highway District asserts this Court has consistently applied the *Tibbs* standard to determine when the statute of limitations is triggered for claims of inverse condemnation and there is no valid reason to create a different standard in this case.

C & G argues *Tibbs* and its progeny do not apply because none of those cases involved a direct physical taking. C & G urges this Court to follow the district court's reasoning and apply the "project completion" rule of *Farber*. Otherwise, C & G claims, private citizens whose land is subjected to a government construction project will be forced to bring their claims before they know the full extent of their damages.

This Court's holding in *Farber*, 102 Idaho at 399, 630 P.2d at 686, provides instruction for determining when the statute of limitation is triggered in an inverse condemnation

case where the government takes private land by means of a construction project. The Farbers sued the State for damages to their property resulting from construction of a road intersection. *Id.* The Farber's claim sounded in tort and the relevant issue on appeal was whether they filed notice under the ITCA within the designated time period. *Id.* The Farbers contended they could not know the extent of their damages and, therefore, the notice period under the ITCA was not triggered until completion of construction. *Id.* at 400, 630 P.2d at 687.

Agreeing with the Farbers, this Court held the notice period under the ITCA was not triggered until the State completed the construction project. *Id.* at 402, 630 P.2d at 689. In adopting the project completion rule, the *Farber* Court distinguished *Farber* from an earlier ITCA case, *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977), and cited approvingly to the Washington case, *Gillam v. City of Centralia*, 14 Wash.2d 523, 128 P.2d 661 (1942) (overruled in part on other grounds). *Id.* at 400, 630 P.2d at 687. In *Ralphs*, the plaintiff filed notice of his tort claim too late because the damages arose from a single event, which notified the plaintiff of all his damages, and the plaintiff waited beyond the notice period to file his claim. *Id.* at 401, 630 P.2d at 688. The *Farber* Court reasoned the nature of the government's wrongdoing, a continuing construction project, required a different standard for determining when the notice period was triggered.[1]

The *Farber* Court then adopted the project completion rule promulgated by the Washington Supreme Court. *Id.* In *Gillam*, it was determined that when a takings claim based on the Constitution occurs by means of a government construction project, the statute of limitations for inverse condemnation does not accrue until completion of the project. *Gillam*, 128 P.2d at 663. The Washington Supreme Court reasoned that the property owner was justified in waiting until the pro-

---

1. This project completion rule was an anomaly to the usual standard for when the notice period is triggered for purposes of the ITCA. *See Magnuson Properties P'ship v. City of Coeur d'Alene*, 138 Idaho 166, 169–70, 59 P.3d 971, 974–75 (2002)

(holding that the notice period for purposes of the ITCA is customarily triggered upon the occurrence of a wrongful act, even if the full extent of damages is not known).

ject was completed before bringing suit for damages because until completion, there was no reliable method to determine the extent of the damages. *Id.* (quoting *Foley v. Cedar Rapids,* 133 Iowa 64, 110 N.W. 158 (1907)).

The *Farber* Court also reasoned that in a situation where the wrongful act was a government construction project, the "project completion" rule better suited the purposes of the ITCA's notice requirement because, until the State completed all the acts pursuant to the contract it made for construction, the parties could not assess the extent of damages. *Id.* at 401, 630 P.2d at 688. Furthermore, the *Farber* Court reasoned if a party can present the government with a complete claim, the government might better attempt a settlement on the basis of clearly ascertainable facts. *Id.* The *Farber* Court also based its reasoning on independent policy considerations, primarily the need for certainty and efficiency in resolving claims, which dictated a standard setting forth a clearly ascertainable date that triggers the ITCA's notice requirement. *Id.* at 402, 630 P.2d at 689.

We find the reasoning of *Farber* and its "project completion" rule the proper standard for determining when a claim for inverse condemnation accrues for purposes of the statute of limitations. A landowner subjected to the taking of his or her property by a government construction project should not be required to prematurely bring an inverse condemnation claim before damages can be fully assessed. *See U.S. v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). Neither should a landowner be forced to engage in piecemeal litigation or risk the effects of res judicata by suing prematurely; rather, a private citizen whose land is taken by means of a construction project has the right to wait until completion of the project before his or her inverse condemnation claim accrues for purposes of calculating the statute of limitations. *Id.* Furthermore, the Highway District's erroneous belief it had an easement over the section line caused the confusion in this case. It would be bad precedent for this Court to condone the government's misrepresentation, albeit innocently mistaken, by holding other-

wise. The project completion rule promotes judicial economy and certainty, which benefits all parties involved in a takings case.

Additionally, under Idaho Code § 7–711 (2002), when the government takes a citizen's real property, he or she is entitled to severance damages when the taking results in separate parcels of land. *See Covington v. Jefferson County,* 137 Idaho 777, 780, 53 P.3d 828, 831 (2002). At oral argument, C & G's counsel indicated only a small fraction of the total damages awarded by the jury were for value of the actual property taken. A substantial amount of the damages were due to severance of C & G's property. Although severance damages may be estimated before a taking occurs, obviously they can be more accurately and satisfactorily determined after completion of construction.

This analysis should not be taken as a reversal of *McCuskey* where this Court refused to apply *Farber's* project completion rule to determine when an inverse condemnation claim accrues. 128 Idaho at 218, 912 P.2d at 105. In *McCuskey,* the plaintiff asked this Court to analogize the nature of the government's wrongdoing in *Farber,* a continuing tort, to that of an inverse condemnation. The *McCuskey* Court reasoned the plaintiff provided no compelling reason to deviate from the standard established in *Tibbs.* C & G provides the compelling reasons *McCuskey* failed to present. Today's holding is not based on the nature of the government's wrongdoing. Rather, it is based on sound public policy that requires adoption of the project completion rule. Also, today's holding should not be read to disrupt the rule of *Tibbs* and its progeny, which continues to apply to claims of inverse condemnation not involving a construction project.

**B. Substantial, Competent Evidence Supports The Finding That The Highway District Failed To Prove The Affirmative Defense Of Quasi Estoppel.**

 Quasi estoppel prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken. *Floyd v. Bd. of*

*Comm'rs of Bonneville County,* 137 Idaho 718, 726, 52 P.3d 863, 871 (2002) (citing *E. Idaho Agric. Credit Ass'n. v. Neibaur,* 133 Idaho 402, 410, 987 P.2d 314, 322 (1999)). Quasi estoppel applies when it would be unconscionable to allow the party to be estopped to change positions from one they acquiesced in or from one they accepted a benefit. *Id.* For quasi estoppel to apply, the party to be estopped must have either gained some advantage against the other party, produced a disadvantage to the other party, or the other party must have been induced to change positions. *Id.*

The district court found the Highway District failed to prove the affirmative defense of quasi estoppel because it failed to prove C & G took an inconsistent position regarding whether or not C & G would seek compensation for the taking of its property. The district court found C & G simply believed the representation that the Highway District owned an easement along the section line. The district court also found, even assuming C & G acquiesced to the Highway District, it is not now unconscionable for C & G to assert the Highway District had no easement and seek compensation.

The district court's finding regarding the Highway District's failure to prove quasi estoppel is supported by substantial, competent evidence. None of the Highway District officials testified that C & G donated or consented to the gratuitous taking of its property. Several of the Highway District officials testified Martin was in favor of moving the road. However, while Martin may have favored moving the road, such an attitude does not reflect donative intent or intent not to seek compensation for C & G's taken property. The Commissioners testified to knowing Patricia, who owns half of C & G's shares, opposed the New Middleton Road. All the affected property owners testified they were told the Highway District would not compensate them for their land because the Highway District owned an easement. Patricia testified she was threatened with legal action by one of the Commissioners if she continued opposing the New Middleton Road.

Based on this, substantial, competent evidence supports the district court's finding that:

> Plaintiff did not take an inconsistent position, with knowledge of the facts and his rights, regarding whether or not it was entitled to seek compensation for the taking of its property. Plaintiff merely believed the Highway District's incorrect assertion that the Highway District had an easement.... Assuming the Plaintiff could be held to have acquiesced in the Highway District's incorrect assertion that it had an easement across Plaintiff's property, it would not be unconscionable for Plaintiff to now assert that the Highway District did not have such easement and that Plaintiff is therefore entitled to compensation for the taking of its property.

Therefore, we affirm the district court's finding that the Highway District failed to prove the elements of quasi estoppel.

### C. C & G Is Entitled To An Award Of Attorney Fees On Appeal.

██ A prevailing condemnee is entitled to an award of attorney fees on appeal. *State ex. Rel. Smith v. Jardine,* 130 Idaho 318, 322, 940 P.2d 1137, 1141 (1997). The rationale for awarding attorney fees on appeal to a prevailing condemnee is so the condemnee is not deprived of part of the just compensation to which he or she is entitled under the Constitution. *Id.* As a result, C & G, as the prevailing condemnee, is entitled to an award of attorney fees on appeal.

### IV.

### CONCLUSION

When the government takes private property by means of a construction project without condemnation proceedings, the statute of limitations, for purposes of bringing an inverse condemnation claim, is triggered upon completion of construction. As a result, C & G's January 31, 1997, complaint for inverse condemnation was timely filed because the Highway District did not substantially complete construction of the road until May 1993. The district court's finding that the Highway District failed to prove its affirmative defense

of quasi estoppel is supported by substantial, competent evidence. C & G, as the prevailing party, is entitled to an award of attorney fees and costs on appeal.

Justices SCHROEDER, and WALTERS, and Justices Pro Tem SCHWARTZMAN and HOHNHORST concur.

Justice Pro Tem SCHWARTZMAN, specially concurring.

I concur in the lead opinion of this Court. Adopting the "project completion" rule puts Idaho in line with the majority of courts called upon to determine the time the statute of limitations begins to run in a direct physical taking/inverse condemnation case. In *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), the Supreme Court cogently set forth both the sound legal reasoning and policy considerations supporting this rule:

> The Government could, of course, have taken appropriate proceedings, to condemn as early as it chose, both land and flowage easements. By such proceedings it could have fixed the time when the property was taken.

> The Government chose not to do so. It left the taking to physical events, thereby putting on the owner the onus of determining the decisive moment in the process of acquisition by the United States when the fact of taking could no longer be in controversy.... [T]he claim traces back to the prohibition of the Fifth Amendment, nor shall private property be taken for public use, without just compensation. The Constitution is intended to preserve practical and substantial rights, not to maintain theories. One of the most theory- ridden of legal concepts is a cause of action. This Court has recognized its shifting meanings and the danger of determining rights based upon definitions of a cause of action unrelated to the function which the concept serves in a particular situation.

> .... The Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding causes of action—when they are born, whether they proliferate, and when they die.

> We are not now called upon to decide whether in a situation like this a landowner might be allowed to bring suit as soon as inundation threatens. Assuming that such an action would be sustained, it is not a good enough reason why he must sue then or have, from that moment, the statute of limitations run against him....

> When dealing with a problem which arises under such diverse circumstances procedural rigidities should be avoided. All that we are here holding is that when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really taken.

*Id.* at 747–749, 67 S.Ct. at 1384–1385, 91 L.Ed. at 1793–1794 (internal citations and quotations omitted); *see also Pierpont Inn, Inc. v. State*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737 (1969).

Certainly, in this case, the Highway District could have fixed the time when the property was taken by instituting an action to condemn whatever interest C & G may have owned in the land. However, it voluntarily chose not to do so.

Despite its choice not to institute condemnation proceedings, the Highway District nevertheless asserts that C & G should be estopped from pursuing its rightful claim even if that claim is not barred by the statute of limitations. The Highway District's misperception of its property rights (easement) should hardly inure to its benefit to allow such an estoppel. In effect, C & G was told to "go fight city hall" if it disagreed with the Highway District's erroneous contention that it had an easement in the property and could build a road upon it without paying just compensation. If any party should receive the equitable benefit of an estoppel, quasi or otherwise, then I would favor its being used *against* the Government's affirmative defense of raising the statute of limitations in the first place under the circumstances de-

scribed herein. Given our decision, that issue is now moot.

Justice Pro Tem HOHNHORST concurs.

Justice Pro Tem HOHNHORST, specially concurring.

Like Judge Schwartzman, I concur fully in the majority opinion. I also join in his special concurrence. I write separately only for the purpose of pointing out that invasive, uncompensated takings which entail the construction of public improvements on private property have distinct characteristics which set them apart from both non-invasive and so-called "regulatory" takings. There are sound practical and policy reasons for recognizing these distinctions. This case presents a classic example of these differences and serves to readily explain why the principles set forth in *McCuskey v. Canyon County Commissioners*, 128 Idaho 213, 912 P.2d 100 (1996) and *Tibbs v. City of Sandpoint*, 100 Idaho 667, 603 P.2d 1001 (1979) are inapposite.

First, it should be noted that the Court does not and has not overruled either *McCuskey* or *Tibbs*; rather, the Court has distinguished the facts presented here from those presented in *McCuskey* and *Tibbs*, and has clarified the types of cases to which *McCuskey* and *Tibbs* apply.

In *McCuskey* the Court determined that actions for inverse condemnation are governed by the four year "catch-all" limitation period set forth in I.C. § 5–224. While § 5–224 provides that actions to which it applies "[M]ust be commenced within four (4) years *after the cause of action shall have accrued*," it does not specify when "the cause of action shall have accrued" in order to set the statutory period of limitation in motion.

In *McCuskey*, the court resolved this uncertainty by "borrowing" from its earlier decision in *Tibbs*. In *Tibbs*, the Court was called upon to determine the date as of which property which is the subject of an inverse taking should be valued. Unlike the situation presented here, the plaintiffs in *Tibbs* claimed their property had been taken as a result of increased noise and probable restrictions on the height of construction occa-

sioned by an extension of the runway at the municipal airport which caused aircraft to routinely over-fly their farmstead. Adopting the approach taken by the U.S. Court of Claims in similar proceedings brought against the federal government, the court held that the diminution in value should be determined "[A]fter the full extent of the impairment of plaintiffs' use and enjoyment of [the property] become apparent." 100 Idaho at 671, 603 P.2d 1001 quoting *Aaron v. United States*, 311 F.2d 798, 802, 160 Ct.Cl. 295 (Ct.Cl.1963).

In *McCuskey*, the court simply took its holding in *Tibbs* concerning the date of valuation and pressed it into double-duty to fix the date of accrual for statute-of-limitation purposes in inverse condemnation cases.

In view of this history, several observations seem abundantly fair. First, those who are critical of today's decision on the basis that it surreptitiously overrules *McCuskey* and/or *Tibbs* are to be reminded that while the *McCuskey* decision can fairly be praised for its singular efficiency in creating a single date for both limitation and valuation purposes, it achieved this administrative symmetry by shortening the time within which governmental authorities can be held responsible for violating the provisions of both the state and federal constitutions which prohibit the taking of private property without just compensation.

Secondly, those who are critical of the majority's decision to apply the rationale of *Farber v. State*, 102 Idaho 398, 630 P.2d 685 (1981) on the basis that *Farber* involved the issue of the time period for the filing of a notice of claim under the Idaho Tort Claims Act, rather than a statute of limitation, should remember that the court in *McCuskey* premised its holding upon *Tibbs*, which addressed the issue of *the date of valuation*, *not* the date of accrual for limitation purposes. There is at least as much logic in relying upon *Farber* to determine when a limitation period commences to run.

Third, it is important to note that cases which involve an actual physical invasion like that which occurred here can readily be distinguished from non-invasive takings like

that involved in *Tibbs,* and regulatory takings like that involved in *McCuskey.* If one disregards the fact that *Tibbs* involved the date of valuation, and instead treats it as if it were intended to establish the date of accrual for limitation purposes, it makes some sense to tie the plaintiff's obligation to file his non-invasive inverse condemnation claim at the point in time when "the full extent of the impairment of plaintiff's use and enjoyment ... became apparent." 100 Idaho at 671, 603 P.2d 1001. Similarly, in cases like *McCuskey,* where the "taking" consists of the adoption or enforcement of governmental regulations which preclude the plaintiff from using his land for any economically viable purpose, it makes sense to hold that the claim accrues when the plaintiff "[B]ecame aware of the full extent of the government's interference ..." 128 Idaho at 218, 912 P.2d 100.

By comparison, a case which instead entails an actual physical invasion of private property produces two related, but distinct forms of harm. The first, and most obvious, is the deprivation of the fair market value of the land actually consumed by the public improvement. The second, less-obvious but equally important element of loss is the economic injury inflicted upon any adjoining property which is not actually invaded, and which remains in the plaintiff's ownership. It is a well-established principle that where the public's use of the condemned land diminishes the value of other adjoining, untaken property, the owner is entitled to recover this loss (typically referred to as "severance damage") in addition to the value of the invaded land. I.C. § 7–711(2). *See, e.g., Canyon View Irr. Co. v. Twin Falls Canal Co.,* 101 Idaho 604, 614, 619 P.2d 122 (1980); *State ex. rel. Symms v. City of Mountain Home,* 94 Idaho 528, 532, 493 P.2d 387 (1972).

It is frequently the case that while the value of land actually occupied by the public improvement is relatively minor, the severance damage to the remaining property caused by the public use is substantial, and exceeds the value of the occupied land itself by magnitudes. It may well be that if the loss were limited to the value of the occupied land, the nominal amount at stake would not, as a practical matter, justify the commencement of a full-blown inverse condemnation action, including the associated cost of employing valuation experts, surveyors and able counsel. The potential for recovery of substantial compensation for additional severance damage can entirely change this calculus.

Such seems to be the case here. At oral argument, counsel noted that while the jury awarded damages totaling $212,000, C & G's own evidence concerning the value of the relatively small amount of land actually occupied by the roadbed had a fair market value of approximately $12,000. The remaining $200,000, attributable to the severance loss suffered to the remainder of C & G's farmland represented more than 94% of the verdict.

The difficulty is that, even under the rationale of *Tibbs* and *McCuskey,* the "full extent of the impairment" associated with severance damage to the remainder ordinarily will not be ascertainable until the public project is completed and its use begins. To compel the landowner to produce evidence which is unnecessarily conjectural in an attempt to predict his loss before either its existence can be confirmed or its amount can be measured represents a result which is neither just to the landowner who has wrongfully been deprived of his property nor the public which must pay the just compensation required by the taking. It is not unreasonable to require a governmental entity which has violated a citizen's basic constitutional right to remain subject to suit until the occurrence of actual loss attributable to its wrongful conduct can be verified and valued. Adopting the time of project-completion as the date of accrual of a claim for inverse condemnation which involves a physical invasion accomplishes this simple goal.

Finally, the vast majority of other states which have been faced with the same issue, including our sister western states, have elected to fix the date of project completion as the date of accrual for limitation purposes. *See, e.g., DeAlfy Properties v. Pima County,* 195 Ariz. 37, 985 P.2d 522, 524 (Ariz.App. 1998); *Pierpont Inn, Inc. v. State,* 70 Cal.2d

282, 74 Cal.Rptr. 521, 449 P.2d 737, 744–45 (1969) (overruled in part on other grounds); *Shockley v. Public Serv. Co. of Colorado,* 525 P.2d 1183, 1184 (Colo.App.1974)(*cert. den.*); *Maragos v. City of Minot,* 191 N.W.2d 570, 572 (N.D.1971); *Gillam v. City of Centralia,* 14 Wash.2d 523, 128 P.2d 661, 663–64 (1942) (overruled in part on other grounds); *Wyoming State Hwy. Dept. v. Napolitano,* 578 P.2d 1342, 1350–51 (Wyo.1978). Today's decision brings Idaho into line with this well-established majority rule.

For these reasons, and those set forth in the majority opinion and Judge Schwartzman's special concurrence, I join in the decision to affirm the district court's holding that C & G's inverse condemnation claim was not barred by the statute of limitation.