IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 34570

DOUGLAS V. HARRIS and SHARON K. HARRIS, husband and wife, dba HARRIS RANCH,

   Plaintiffs-Counterdefendants-Appellants,

v.

STATE OF IDAHO, ex rel. DIRK KEMPTHORNE, Governor; BEN YSURSA, Secretary of State; LAWRENCE G. WASDEN, Attorney General; KEITH L. JOHNSON, State Controller, and DR. MARILYN HOWARD, Superintendant of Public Instruction, as the STATE BOARD OF LAND COMMISSIONERS; and the IDAHO DEPARTMENT OF LANDS; and WINSTON WIGGINS, Director of the Department of Lands,

   Defendants-Counterclaimants-Respondents

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2009 Term

2009 Opinion No. 79

Filed: June 3, 2009

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County.  Hon. John R. Stegner, District Judge.

District court order denying compensation on quiet title action, <u>affirmed.</u>

Mary K. Denton, Meridian; Perkins Coie, LLP, Boise, for appellants.  Mary K. Denton argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  James D. Carlson, Deputy Attorney General, argued.

---

Burdick, Justice

Appellants Douglas and Sharon Harris (the Harrises) commenced this action to quiet title to the sand and gravel on a parcel of real property they own, as well as to recover mesne profits and damages for inverse condemnation.  The district court quieted title to the property in the

Harrises. However, the court denied the Harrises mesne profits and damages, finding that the Harrises were barred from recovering under the statute of limitations and had furthermore waived their right to recover through a mineral lease they signed with Respondent State of Idaho (State). The Harrises appeal from the court's denial of compensation, damages, fees, and all other remuneration. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Harrises bought their property in 1980 under a Personal Representative's Deed from the estate of William and Matilda Riley. The Rileys had been assigned their interest in the property in 1951 by Frank Wilken, who had purchased the property from the State of Idaho in 1949 under a certificate of land sale. The land sale certificate reserved to the State "the right to all coal, oil, oil shale, gas, phosphate, sodium and other mineral deposits . . . , as required by Chapter 96 of the 1926 Session Laws." In 1971, the last payment was made on the certificate and the State of Idaho issued a deed for the forty acres to the Riley estate. The deed was subject "to the provisions of § 47-701, Idaho Code, reserving to the State all Mineral Rights in lands subsequent to the 8th day of May, 1923 including sand and gravel." After their purchase in 1980, the Harrises used the property as pasture and as a rock quarry. The Harrises sold sand and gravel to numerous customers, including the Latah County Highway District.

In 1985, the Idaho Department of Lands (the Department), contacted the Harrises and informed them that the mineral rights to the Harrises' land were reserved to the State. The State had determined it was the owner of the sand and gravel on the property and the Harrises needed to reimburse it for the past sand and gravel removal. The Harrises signed a promissory note agreeing to pay the State $5,000 plus interest for the sand and gravel removed by Harris after 1980. They also signed a ten-year "Mineral Lease" on April 1, 1986, which was renewed in 1996. The Mineral Lease granted the Harrises the exclusive right and privilege to mine for sand and gravel on the property in exchange for set rent and royalties paid to the State. On November 22, 1999, following this Court's opinion in *Treasure Valley Concrete, Inc. v. State*, 132 Idaho 673, 978 P.2d 233 (1999), the Department sent a letter to the Harrises disclaiming any interest in the Harrises' sand and gravel and terminating the Mineral Lease. The letter from the Department stated:

> The state issued the lease based on its belief that Idaho Code § 47-701 reserved ownership of sand, gravel, basalt and pumice to the state in all sales of endowment lands. Earlier this year, however, the Idaho Supreme Court ruled that

2

these minerals were not reserved under Idaho Code § 47-701 until 1986 and therefor [sic] the state did not own sand, gravel, basalt and pumice on former endowment lands sold prior to that date.

The letter further stated that the Department "will no longer assert any claim to ownership of these minerals on the lands covered by the lease" and offered to reimburse a portion of the payments received under the Mineral Lease if the Harrises agreed to release the State from any future claim for damages. The Harrises declined the partial refund, demanding a full refund.

In 2002, the Harrises filed this lawsuit alleging three causes of action: quiet title, mesne profits/ejectment/ouster, and inverse condemnation. On July 20, 2004, the district court entered an order granting in part the Harrises' motion for summary judgment to quiet title. The court also granted the State's motion for summary judgment on mesne profits, finding that the Harrises had contractually waived their right to pursue legal remedies for the State's dispossession and ouster of the Harrises' property rights. Following a series of motions and orders, the district court entered its final judgment in this case on July 25, 2007. The court ruled that the Harrises were precluded from recovering on their inverse condemnation claim for the period of 1986-1999 because the terms of the Mineral Lease were controlling during that period and the limitation of liability in Section 27 of the Mineral Lease was viable as a defense to the Harrises' claim for damages. The court also held that I.C. § 5-224 barred recovery for the State's taking from the period prior to the Mineral Lease. In the final judgment, title was quieted in the Harrises and the deed was reformed. The Harrises' other claims for relief were denied. The Harrises appeal the district court's rulings denying relief and attorney fees.

## II. ANALYSIS

When reviewing a ruling on a summary judgment motion, this Court applies the same standard used by the district court. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The burden of establishing the absence of a genuine issue of material fact is on the moving party. *Hayward v. Jack's Pharmacy, Inc.*, 141 Idaho 622, 625, 115 P.3d 713, 716 (2005). This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the nonmoving party. *Cristo Viene*, 144 Idaho at 307, 160 P.3d at 746. Summary judgment is improper "if

3

reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

## A.    Idaho Code § 5-224 precludes the Harrises from recovering.

The Harrises argue that they should not be barred from receiving just compensation for the State's taking by I.C. § 5-224. Idaho Code § 5-224 contains the statute of limitations for an inverse condemnation claim, and states: "[a]n action for [inverse condemnation] must be commenced within four (4) years after the cause of action shall have accrued." *See C&G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 143, 75 P.3d 194, 197 (2003). The date when a cause of action accrues is a question of law to be determined by this Court where no disputed issues of material fact exist. *Id.* at 142, 75 P.3d at 196. "The actual date of taking, although not readily susceptible to exact determination, is to be fixed at the point in time at which the impairment, of such a degree and kind as to constitute a substantial interference with plaintiffs' property interest, became apparent." *Tibbs v. City of Sandpoint*, 100 Idaho 667, 671, 603 P.2d 1001, 1005 (1979).

The Harrises contend that the State's "taking" varied over the years from its "cloud of condemnation" to barring the Harrises from access, prohibiting building, and enforcing the lease. They also claim that when a cause for delay in bringing an action can be traced back to the government's misrepresentation, public policy requires that the statute of limitations run from the last of the government's acts. However, they provide no legal support for this statement. We affirm the district court's determination that the full extent of the Harrises' loss of use and enjoyment of the property became apparent when they entered into the Mineral Lease. At that point in time, the impairment constituted a substantial interference with their property interest because they signed an agreement promising to pay royalties and rents on the sand and gravel. Therefore, the Harrises are barred from recovering under their inverse condemnation claim by I.C. § 5-224.

## B.    Section 27 of the Mineral Lease precludes the Harrises from recovering any other damages.

When the language in a contract is clear and unambiguous, its interpretation is a question of law and the language will be given its plain meaning. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). "The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered." *Id.* In addition, a party may generally contract to absolve himself from certain duties and liabilities under a contract

4

subject to certain limitations. *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 178, 595 P.2d 709, 712 (1979). However, courts look with disfavor on attempts to avoid liability and construe such provisions strictly against the person relying on them. *Id*.

Section 27 reads:

TITLE: Lessor makes no representation or warranty whatsoever with respect to its title to said leased premises and Lessee shall be solely responsible for satisfying itself with respect to the ownership of such lands; and if subsequently divested of said title, no liability shall be incurred by virtue of this lease for any loss or damage to the Lessee; nor shall any claim for refund of rents or royalties therefore paid, be made by said Lessee, its successor or assignees.

By its clear and unambiguous language, Section 27 places the responsibility for determining ownership on the Harrises, and absolves the State from liability for any subsequent divestment of ownership. Even construing the provision strictly against the State, the State made no representation in the Mineral Lease as to its title to the leased minerals.

The Harrises assert that the Mineral Lease lacks the elements of a valid and binding contract because it was not supported by consideration, lacked mutuality of intent, and was signed under duress. For each of these arguments, the Harrises rely on their contention that the State misrepresented its ownership interest in the sand and gravel by not having a good faith belief in its ownership yet still threatening severe fines and penalties if the Harrises did not sign the Mineral Lease. In support of this contention the Harrises point to the history of the Department's dealings with the issue of sand and gravel.[1] However, in deciding whether to award attorney fees under I.C. § 12-117, this Court in *Treasure Valley Concrete, Inc. v. State*, 132 Idaho 673, 978 P.2d 233 (1999), stated that "[t]he interpretation of [pre-1986] I.C. § 47-701 and whether sand, gravel and pumice are included in that section's list of minerals presents a question of first impression before the Court" and that "other states have interpreted 'minerals' in similar statutes to include, sand, gravel and pumice." *Id*. at 678, 978 P.2d at 238. Therefore, until our decision in *Treasure Valley Concrete*, some question remained as to whether sand and

---

[1] The Harrises point to two district court cases, from which the State did not appeal, that found sand and gravel were not "minerals" under I.C. § 47-701. They also focus on the fact that in 1972, the Board of Land Commissioners directed the Department to "correct" deeds by deleting any reference to sand and gravel if the original land sale certificate did not specifically identify sand and gravel as reserved to the state. In addition, the Harrises state that in 1981 the State legislature expressly declined to expressly list sand and gravel as a mineral in I.C. § 47-701. Finally, the Harrises rely on a letter from Deputy Attorney General Rinda Ray Just to the Department stating that "the policy of the land board that sand and gravel will not be reserved unless done so specifically has just that effect—no reservation unless such language is present in the contract and deed."

gravel was a mineral under I.C. § 47-701, and the creation of the Mineral Lease between the State and the Harrises simply represented opposing parties of conflicting interests entering into an agreement.

After a thorough review of the record we find that the contract was supported by consideration and entered into with mutuality of intent without duress. The State's claim to the sand and gravel was based upon a good faith belief in its ownership and, therefore, the State's forbearance from asserting a claim against the Harrises constituted valid consideration. Furthermore, both parties had the intent to contract and a mutual understanding of the terms of the agreement. Finally, the contract was not the product of duress because the Harrises consulted with trusted individuals on their options and had an attorney/legislator review the matter with the State before they made the decision to enter into the contract. The Harrises also had the option of pursuing a suit against the State at the time they signed the Mineral Lease, and if they failed to do so for economic reasons, their financial circumstances were not the result of coercive acts by the State. We find that the Mineral Lease was a valid and binding contract, and we therefore affirm the district court's determination that Section 27 expressly precludes the Harrises from recovering damages or mesne profits in this case.

## C.      Attorney fees.

The Harrises claim they are entitled to attorney fees below and on appeal on three grounds: (1) I.C. § 12-117, (2) I.C. § 12-121, and (3) the private attorney general doctrine. Idaho Code § 12-117 provides:

> [I]n any administrative or civil judicial proceeding involving as adverse parties a state agency . . . and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

Under I.C. § 12-121, attorney fees are awarded to the prevailing party if the court is left with the belief that the proceeding was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006). The Harrises lost on two of their three claims and, in accordance with I.R.C.P. 54(d)(1)(B), the district court considered "the final judgment or result of the action in relation to the relief sought by the respective parties" in determining that they were not the prevailing party. In addition, there is no indication that the State defended the claims against it unreasonably or without

6

foundation; therefore, we affirm the district court's denial of attorney fees under I.C. §§ 12-117 and 12-121.

Furthermore, the Harrises rely on *Hellar v. Cenarrusa*, 106 Idaho 571, 682 P.2d 524 (1984), for their argument that they are entitled to attorney fees under the private attorney general doctrine. To determine whether a party is entitled to an award of attorney fees under the private attorney general doctrine, this Court considers "(1) the strength or societal importance of the public policy indicated by the litigation; (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and (3) the number of people standing to benefit from the decision." *State v. Dist. Court of Fourth Judicial Dist.*, 143 Idaho 695, 702, 152 P.3d 566, 573 (2007). The decision to award attorney fees under this doctrine is discretionary. *Id.* In *District Court*, we found that the district court did not abuse its discretion in failing to award attorney fees where only the parties to the case stood to benefit from the decision, and the determination of whether the State must pay the costs of a special master was not a matter of substantial public policy. *Id.* Similarly, the district court here did not abuse its discretion because the Harrises are the only parties standing to benefit from this decision, and the determination of whether the State must pay the Harrises for the sand and gravel rights is not a matter of substantial public policy. Any public policy question on this issue was settled in *Treasure Valley Concrete*. Therefore, we affirm the district court's denial of attorney fees and, for the same reasons, deny the Harrises attorney fees on appeal.

### III. CONCLUSION

We affirm the district court's denial of compensation, damages, fees, and all other remuneration to the Harrises.

Chief Justice EISMANN and Justices W. JONES, HORTON and WALTERS, Pro Tem, **CONCUR.**